16954-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

BELSITO COMMUNICATIONS INC. d/b/a THE LEGAL
ADVOCATE,

                                     Plaintiff,

   -against-

TORKLAW d/b/a ACCIDENTNEWS.CO, TORQUE
VENTURES GLOBAL STRATEGIES, LLC d/b/a
ACCIDENTNEWS.CO, TORKLAW d/b/a
SAFETYWATCH.COM, AND REZA TORKZADEH, AS
FOUNDER OF TORKLAW/CEO OF TORQUE VENTURES
GLOBAL STRATEGIES, LLC, INDIVIDUALLY,

                                     Defendants.
------------------------------------------------------------------------x

**VERIFIED COMPLAINT**

      Plaintiff Belsito Communications Inc., d/b/a The Legal Advocate, by and through its attorneys, McCabe & Mack LLP, respectfully alleges as follows:

**INTRODUCTION**

      1.     This is an action for (1) copyright infringement, (2) breach of contract, and (3) misappropriation of "hot news" arising from the illegal use, copying and publication of Plaintiff's registered intellectual property by Defendants TorkLaw d/b/a Accidentnews.co, Torque Ventures Global Strategies, LLC d/b/a Accidentnews.co, TorkLaw d/b/a SafetyWatch.com, and Reza Torkzadeh, as founder of TorkLaw/CEO of Torque Ventures Global Strategies, LLC, individually.

      2.     Plaintiff Belsito Communications Inc. is the owner of The Legal Advocate, an innovative news platform designed to report breaking news from around the United States and provide a unique insight into the legal world.

      3.     The Legal Advocate's breaking news stories and proprietary analyses are a

16954-1

significant component of its business.

4. Use of The Legal Advocate is governed by a Terms of Use agreement that is prominently displayed on the website. In exchange for access to the breaking news reports and proprietary analyses published on The Legal Advocate, all users agree to the Terms of Use agreement and are bound by all provisions contained therein. A copy of the Terms of Use is annexed as <u>Exhibit "A"</u>.

5. Among other things, the Terms of Use provide that the breaking news articles, proprietary analyses and other intellectual property made available on The Legal Advocate may not be distributed or reproduced without the express permission of The Legal Advocate.

6. Despite the copyrighted and proprietary nature of The Legal Advocate's content, along with their contractual obligations pursuant to the Terms of Use Agreement, Defendants have been illegally obtaining, distributing, copying, reproducing and publishing this content without permission.

7. Defendants' infringement is willful. Defendants are aware that the subject content is copyrighted and cannot be copied, reproduced and/or published on another site without the express permission of Plaintiff.

8. Defendants actions have caused significant injury to The Legal Advocate, entitling Plaintiff to compensatory damages, injunctive and/or other equitable relief, punitive damages, and attorney's fees.

## PARTIES

9. Belsito Communications Inc. is a domestic business corporation registered with the New York State Department of State on or about December 3, 1997. Belsito Communications Inc. was founded by Joseph Belsito, the president and CEO of the company. Belsito Communications Inc. owns, publishes, runs, maintains, manages and does business as

16954-1

The Legal Advocate and maintains its principal place of business at 1 Ardmore St., New Windsor, New York, 12553.

10. Defendant TorkLaw is a plaintiffs-only law firm founded in 2012 that is formerly known as Torkzadeh Law Firm. TorkLaw has offices in at least six (6) states as well as the District of Columbia. TorkLaw is headquartered in Los Angeles and, upon information and belief, maintains its principal place of business at 811 Wilshire Boulevard, Suite 1700, Los Angeles, California, 90017.

11. Defendant Torque Ventures Global Strategies, LLC is a domestic limited liability company registered with the California Secretary of State on or about August 1, 2005. Torque Ventures Global Strategies, LLC is registered as a website development and consulting company and maintains its principal place of business at 19950 Crystal Hills Lane, Northridge, California, 91326.

12. Upon information and belief, Torque Ventures Global Strategies LLC, owns, publishes, runs, maintains, manages and does business as Accidentnews.co, a digital platform providing information about auto accidents. Upon information and belief, Accidentnews.co advertises free legal consultations exclusively on behalf of TorkLaw.

13. Defendant Reza Torkzadeh is the founder of TorkLaw and the CEO of Torque Ventures Global Strategies, LLC.

14. Upon information and belief, TorkLaw, alone and/or in connection with its business partners or affiliates, including, but not necessarily limited to, Torque Ventures Global Strategies, LLC, owns, publishes, runs, maintains, manages and does business as Accidentnews.co.

15. Upon information and belief, in addition to operating Accidentnews.co, alone and/or in connection with Torque Ventures Global Strategies, LLC, TorkLaw owns,

16954-1

publishes, runs, maintains, manages and does business as SafetyWatch.com.

16. SafetyWatch holds itself out as a consumer advocacy organization. Upon information and belief, TorkLaw is the exclusive "sponsor" of this organization.

17. Upon information and belief, SafetyWatch.com is a disguised advertisement for TorkLaw.

## JURISDICTION AND VENUE

18. This is an action for copyright infringement arising under the Copyright Act of 1976, as amended, 117 U.S.C. § 101 et seq., as well as for common law claims. This Court has original and supplemental jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1338 (copyright), and 1367 (supplemental).

19. Venue is proper in this judicial district pursuant to 38 U.S.C. § 1391(b) and (c), in that a substantial part of the vents giving rise to the claims occurred in this district, the harm occurred in this district, and Defendants are subject to personal jurisdiction in this district.

## STATEMENT OF FACTS

### Plaintiff's Business Model

20. The Legal Advocate is an investigative and news and legal analysis company dedicated to informing, educating, assisting and helping the general public with respect to commonly encountered legal issues. Plaintiff invests substantial financial and human resources in generating original and high-quality content for their website.

21. The reporting of breaking accident news is an increasingly common method for generating business leads and client development for personal injury law firms, especially those law firms that, like TorkLaw, exclusively represent plaintiffs.

22. The value of the content published on The Legal Advocate lies in the high

16954-1

quality of the investigative reporting and analysis and the timeliness with which that content is made available to the general public.

23. The Legal Advocate's independent reporting is the product of the full-time effort, skill, and judgment of its reporters. The content created therefrom constitutes proprietary and economically valuable intellectual property.

24. The high quality and timeliness of The Legal Advocate's reporting is a critical component of its business model, ensuring the continued loyalty of its users, attracting new users, and helping to attract new clients and business partners seeking further development of their own business through the generation of new client leads.

25. All articles published on The Legal Advocate contain a notice that the article is covered by the website's Terms of Use Agreement. Said Agreement is readily available in easily readable print on the website, and all articles contain a link to the full agreement. See Exhibit "A".

26. Among other things, pursuant to the Terms of Use, all users *"agree not to duplicate, publish, display, distribute, modify, or create derivative works from the material presented through the Site unless specifically authorized in writing by The Legal Advocate."* Id.

27. The content created, authored, written by the analysts and reporters employed by The Legal Advocate are works for hire, and the copyright for those works vests within and is owned exclusively by Belsito Communications Inc.

**Defendants' Infringement of Plaintiff's Copyrighted Materials**

28. Defendant TorkLaw, alone and/or in connection with its business partners or affiliates, including, but not necessarily limited to, Torque Ventures Global Strategies LLC, runs, owns, manages and/or oversees Accidentnews.co, a website purporting to provide

16954-1

original reporting of breaking news concerning automobile accidents. The Accidentnews.co website is in direct competition with The Legal Advocate with respect to the business of reporting accident news stories and/or providing legal analysis.

29. Defendant TorkLaw, alone and/or in connection with its business partners or affiliates, runs, owns, manages and/or oversees SafetyWatch.com, a website purporting to promote safer communities by reporting accident news stories and providing legal and/or expert analysis.

30. Without authorization from The Legal Advocate, and without The Legal Advocate's consent, TorkLaw, by and through its employees, agents, business partners and/or affiliates has caused to be made, and has directed the copying and widespread distribution of the content of Plaintiff's copyrighted articles for its own financial gain.

31. On multiple occasions, TorkLaw has impermissibly copied, quoted, reproduced, published, publicized, distributed, and/or plagiarized the most creative and original aspects of the content originally created by and originally published on The Legal Advocate.

32. Plaintiff possesses substantial and direct evidence that Defendants obtained the subject copied, quoted, reproduced, published, publicized, distributed and/or plagiarized material directly from The Legal Advocate and not from any other source.

33. Specifically, in an effort to protect its rights in its intellectual property and proprietary work, Plaintiff planted "seed" stories on The Legal Advocate. These "seed" stories are entirely invented, novel, and creative works posing as original breaking news reporting that could only be obtained through the direct use of The Legal Advocate website.

34. The content impermissibly copied, quoted, reproduced, published, publicized, distributed, and/or plagiarized by Defendants includes both original breaking news reporting

as well as "seed" stories.

35. Upon information and belief, neither TorkLaw, nor its business partners or affiliates, generates content for Accidentnews.co and/or SafetyWatch.com through original reporting.

36. Upon information and belief, TorkLaw, profits and benefits from their infringement of The Legal Advocate's intellectual property by, among other things, generating leads for their law firm business.

### Defendants' Infringement is Willful

37. Defendants' repeated infringement of Plaintiff's copyrights is willful. Defendants know that their actions constitute copyright infringement and have otherwise acted with reckless disregard of the high probability of infringement.

38. As a law firm with practices throughout the United States, TorkLaw understanding of, and expertise in, copyright law may be presumed. Even only a passing familiarity with copyright law would provide TorkLaw with actual or constructive knowledge of the wrongness of their actions in copying, quoting, reproducing, publishing, distributing, and/or plagiarizing content originally reported and/or created by and published on The Legal Advocate.

39. In addition, TorkLaw was officially notified that Accidentnews.co illegally published, publicized, distributed, reproduced, copied and/or plagiarized at least one story originally published on The Legal Advocate website in violation of The Legal Advocate's Terms of Use, copyright protections, and/or proprietary rights. A copy of the letter notifying TorkLaw of its illegal use and/or appropriation of The Legal Advocate's content is annexed as Exhibit "B".

40. Upon information and belief, while TorkLaw removed the subject story from

16954-1

both Accidentnews.co and SafetyWatch.com, it has continued to illegally obtain, publish, publicize, distribute, reproduce, copy and/or plagiarize content originally published on The Legal Advocate.

41. The materials willfully infringed upon by Defendants fall within one of two categories: original accident news reports or "seed" stories.

42. With respect to the "seed" stories infringed upon by Defendants, these stories are wholly original and creative, and they are protected, in their entirety, by Plaintiff's copyright.

43. With respect to the original accident news reports infringed upon by Defendants, the principles of copyright law upon which this action is based have been well established by Second Circuit and Supreme Court precedent for well over forty (40) years. While the news itself cannot be copyrighted, it has long been recognized that copyright law protects an author's analysis and interpretation of events, including the manner in which the author structures his or her material and marshals facts, the author's choice of words, and the emphasis given to particular developments. See Wainwright Secs. v. Wall St. Transcript Corp., 558 F.2d 91, 95-96 (2d Cir. 1977) (*quoting* International News Service v. Associated Press, 248 U.S. 215, 234-39 (1918)).

**Defendants' Breach of Contract**

44. In addition to repeatedly infringing Plaintiff's copyrights, Defendants have plainly breached The Legal Advocate's Terms of Use Agreement.

45. All users who access content on The Legal Advocate agree to the Terms of Use governing the site and are bound by all provisions contained therein. See Exhibit "A".

46. Notice is given above each news article that the content of the page, which includes the new article is governed by and subject to a Legal Disclaimer.

47. The Legal Disclaimer provides a link to the Website's "Terms of Use" Agreement. All visitors to the site are given notice thereof and ample opportunity to read, review, and accept the same.

48. Among other things, the Terms of Use Agreement requires that users of the site "*agree not to duplicate, publish, display, distribute, modify, or create derivative works from the material presented through the Site unless specifically authorized in writing by The Legal Advocate.*" Exhibit "A".

49. Among other things, the Terms of Use Agreement also expressly prohibits "*[u]se [of] the Website for any purpose that is unlawful or prohibited . . . [f]or example, us[ing] the Website to violate any law, statute, or regulation (including, without limitation, those governing export control, consumer protection, unfair competition, anti-discrimination, or false advertising).*" Id.

50. Among other things, the Terms of Use Agreement also includes a Copyright and Legal Notice expressly stating that "*[n]o part of [The Legal Advocate's] content may be reproduced, stored in any form without written permission from Belsito.*" Id.

51. Defendants have repeatedly violated these provisions by, among other things, copying, quoting, reproducing, publishing, distributing and/or plagiarizing content originally published on The Legal Advocate.

52. The repeated breaches of the Terms of Use Agreement have caused Plaintiff to suffer economic damages and irreparable harm by reason of the Defendants gaining an unfair economic advantage over Plaintiff to offer Plaintiff's news without incurring Plaintiff's costs to obtain that news.

**Defendants' Misappropriation of "Hot News"**

53. In addition to constituting copyright infringement and a breach of contract,

16954-1

Defendants' actions violate Plaintiff's proprietary rights under the common law tort of "hot news" misappropriation.

54. The "hot news" doctrine is intended to prevent free riding by prohibiting the acquisition and republishing of time-sensitive news and analysis created and generated by a competitor.

55. The timeliness of The Legal Advocate's breaking news reporting is a significant element of its business model.

56. Defendants' copying, quoting, reproducing, publishing, distributing and/or plagiarizing content originally published on The Legal Advocate is a plain attempt to free ride off of Plaintiff's significant financial investment in the creation and production of breaking news and analysis.

57. Upon information and belief, Defendants do not invest in creating and producing breaking news and analysis and are attempting to free ride off of Plaintiff's investments to gain an unfair competitive advantage.

58. The repeated breaches of the Terms of Use Agreement have caused Plaintiff to suffer economic damages and irreparable harm by reason of the Defendants gaining an unfair economic advantage over Plaintiff to offer Plaintiff's news without incurring Plaintiff's costs to obtain that news.

## COUNT I
### (Copyright Infringement)

59. Plaintiff restates, alleges and incorporates by reference each of the preceding paragraphs numbered 1 through 58.

60. Plaintiff owns the copyright to all content published on The Legal Advocate and are the owners and holders of the copyrights for the five (5) specific articles upon which this lawsuit is based, which are identified below:

16954-1

a. "Rick Lowe, 27, killed in Long Beach pedestrian accident" is a seed story published on The Legal Advocate on April 1, 2020. A copy of this story is annexed as <u>Exhibit "C"</u>. This story was copied, quoted, plagiarized, reproduced, distributed, published and/or publicized by TorkLaw on Accidentnews.co and SafetyWatch.com. Correspondence sent via e-mail and overnight delivery, and a screengrab image of Google search results, annexed as <u>Exhibit "D"</u>, confirm the publication of this story on both websites.

b. "Bo Powelton, 21, sadly killed in auto-pedestrian accident" is a seed story published on The Legal Advocate on April 21, 2020. This story was copied, quoted, plagiarized, reproduced, distributed, published and/or publicized by TorkLaw on Accidentnews.co on April 22, 2020 as "Bo Powelton, Killed in West Hills Vehicle-Pedestrian Accident." This story was also copied, quoted, plagiarized, reproduced, distributed, published and/or publicized by TorkLaw on SafetyWatch.com on April 22, 2020 as "Bo Powelton Dies in West Hills Vehicle-versus-Pedestrian Accident." Copies of all three stories are annexed to this pleading as <u>Exhibit "E"</u>.

c. "Davinder Dogra, 64, sadly dies in auto-pedestrian accident" is an originally reported accident news report published on The Legal Advocate on March 13, 2020. This story was copied, quoted, plagiarized, reproduced, distributed, published and/or publicized by TorkLaw on Accidentnews.co on March 14, 2020 as "Authorities Release Details of Vehicle-Pedestrian Crash that Claimed the Life of

16954-1

Davinder Dogra." Copies of both stories are annexed to this pleading as <u>Exhibit "F"</u>.

d. "Gregory Murray, 33, sadly killed after being hit by a vehicle" is an originally reported accident news report published on The Legal Advocate on March 13, 2020. This story was copied, quoted, plagiarized, reproduced, distributed, published and/or publicized by TorkLaw on Accidentnews.co on March 14, 2020 as "Authorities Release Details of Culver City Accident that Killed Gregory Murray." Copies of both stories are annexed to this pleading as <u>Exhibit "G"</u>.

e. "Shirley Lewis, 82, sadly killed in two-vehicle wreck" is an originally reported accident news report published on The Legal Advocate on March 13, 2020. This story was copied, quoted, plagiarized, reproduced, distributed, published and/or publicized by TorkLaw on Accidentnews.co on March 14, 2020 as "Shirley Lewis Identified as Victim of Los Angeles Two-Vehicle Crash." Copies of both stories are annexed to this pleading as <u>Exhibit "H"</u>.

61. Registrations for all five articles have been filed with the United States Copyright Office under Claim Numbers 1-8987509822 and 1-8987509571.

62. Plaintiff invested substantial time, money and labor in the creation and publication of these articles.

63. Defendants have infringed on Plaintiff's registered copyrights by copying, quoting, plagiarizing, publicizing, reproducing, publishing and/or distributing the content of these articles on Accidentnews.co and/or SafetyWatch.com without Plaintiff's consent or authorization.

64. The copying of Plaintiff's articles is substantial in quality and reduces the economic value of Plaintiff's content. Defendants have copied, quoted, appropriated, plagiarized, publicized, reproduced, distributed and/or published the most creative, original and significant elements of these articles.

65. Upon information and belief, Defendants will continue to infringe upon Plaintiff's copyrights, whether such copyrights are officially registered or not, unless they are restrained and enjoined from doing so.

66. Defendants repeated illegal acts of copyright infringement have caused the Plaintiff to suffer untold economic damages and irreparable harm.

67. Defendants actions constitute a blatant violation of Plaintiff=s exclusive rights, as owner and holder of the registered copyrights, of reproduction, preparation of derivative works, and distribution under 17 U.S.C. § 106(1), (2), and (3).

68. Upon information and belief, and in light of TorkLaw's legal expertise, Defendants' copyright violations and infringing acts were willful. Defendants knew they were committing acts of copyright violation and otherwise acted with reckless disregard of the high probability of infringement.

69. As a direct and foreseeable consequence of these illegal acts, Plaintiff has suffered and continues to suffer harm, and is entitled to actual and/or statutory damages of up to $150,000.00 per violation, as well as costs and attorney's fees pursuant to 17 U.S.C. §§ 504 and 505.

### COUNT II
### (Breach of Contract)

70. Plaintiffs restate, allege and incorporate by reference each of the preceding paragraphs numbered 1 through 69.

16954-1

71.  As a result of Defendants' actions, Plaintiff is entitled to a money judgment equal to the economic damages sustained by Plaintiff by reason of the Defendants gaining an unfair economic advantage over Plaintiff to publish Plaintiff's news without incurring Plaintiff's costs to obtain that news.

72.  As a result of Defendants' actions, the value of Plaintiff's asset, The Legal Advocate, has been diminished and Plaintiff is entitled to a money judgment equal to the diminished value of that asset.

73.  As a result of Defendants' actions, Plaintiff is entitled to a money judgment equal to the expenses incurred by Plaintiff to obtain its news stories which Defendants' thereafter misappropriated without incurring Plaintiff's costs to obtain that news.

**COUNT III**
**(Hot News)**

74.  Plaintiffs, restate, allege and incorporate by reference each of the preceding paragraphs numbered 1 through 73.

75.  As a result of Defendants' actions, Plaintiff is entitled to a money judgment equal to the economic damages sustained by Plaintiff by reason of the Defendants gaining an unfair economic advantage over Plaintiff to publish Plaintiff's news without incurring Plaintiff's costs to obtain that news.

76.  As a result of Defendants' actions, the value of Plaintiff's asset, The Legal Advocate, has been diminished and Plaintiff is entitled to a money judgment equal to the diminished value of that asset.

77.  As a result of Defendants' actions, Plaintiff is entitled to a money judgment equal to the expenses incurred by Plaintiff to obtain its news stories which Defendants' thereafter misappropriated without incurring Plaintiff's costs to obtain that news.

16954-1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court issue an Order:

1. Declaring that Defendants have (1) infringed upon Plaintiff's registered copyrights, (2) misappropriated Plaintiff's property interest in its economically valuable and time-sensitive reporting and analysis, and (3) breached its contract with Plaintiff as set forth in The Legal Advocate's Terms of Use; and

2. Declaring that Defendants' acts and conduct as set forth in the preceding paragraphs were willful; and

3. Directing that the Defendants and their business partners, agents, employees, or representatives, and all persons in privity therewith, are prohibited and permanently restrained from copying, quoting, reproducing, publishing, distributing, and/or plagiarizing content originally published on The Legal Advocate; and

4. Directing that Defendants and their business partners, agents, employees, or representatives, and all persons in privity therewith, are prohibited and permanently restrained from distributing or publishing any material that has been derived in any manner from Plaintiff's copyrighted and/or proprietary rights; and

5. Awarding compensatory, actual, punitive and statutory damages to Plaintiff in the amount of one hundred and fifty thousand dollars ($150,000.00) for each act of infringement pursuant to 17 U.S.C. § 504; and

6. Ordering Defendants pay Plaintiff for the costs of this action, pursuant to 17 U.S.C. § 505, including reasonable attorney's fees; and

7. Entering a money judgment against the Defendant(s) pursuant to any Count; and

8. Awarding such other and further relief as the Court deems just and equitable.

16954-1

DATED:   Poughkeepsie, New York

        July 2, 2020

                                        Yours, etc.

                                        McCABE & MACK LLP

                                        By: _____
                                              JOANNA M. LONGCORE
                                        Attorneys for Plaintiff
                                        63 Washington Street
                                        P.O. Box 509
                                        Poughkeepsie, NY 12602-0509
                                        Tel: (845) 486-6800

TO:    TorkLaw d/b/a Accidentnews.co
        811 Wilshire Boulevard
        Suite 1700
        Los Angeles, CA 90017

        TorkLaw d/b/a SafetyWatch.com
        811 Wilshire Boulevard
        Suite 1700
        Los Angeles, CA 90017

        Reza Torkzadeh, as founder of TorkLaw, Individually
        811 Wilshire Boulevard
        Suite 1700
        Los Angeles, CA 90017

        Torque Ventures Global Strategies, LLC
        19950 Crystal Hills Lane
        Northridge, CA 91326

        Reza Torkzadeh, as CEO of Torque Ventures Global Strategies, LLC, Individually
        19950 Crystal Hills Lane
        Northridge, CA 91326

16954-1

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF DUTCHESS       )

I, the undersigned, am an attorney duly admitted to practice in the courts of New York State and say that: I am the attorney of record, or of counsel with the attorney(s) of record, for Plaintiff. I have read the annexed Verified Complaint, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following:

review of correspondence, records, and reports in affirmant's possession.

The reason I make this affirmation instead of Plaintiff is that said Plaintiff does not reside in or maintain an office in the county where affirmant's office is located.

I affirm the foregoing statements are true under penalties of perjury.

DATED:   Poughkeepsie, New York
         July 2, 2020

_____
JOANNA M. LONGCORE