

November 6, 2020

**Jura C. Zibas**
212.915.5756 (direct)
Jura.Zibas@wilsonelser.com

**VIA ECF**

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    **Belsito Communications Inc. v. Torklaw et. al.**
              **20-cv-05094**
              **Pre-Motion Letter re: Proposed Motion to Dismiss**

Dear Judge Torres:

      Our office represents all defendants in the above referenced action, i.e. TorkLaw, Reza Torkzadeh, and Torque Ventures Global Strategies, LLC (collectively "Defendants"). We write pursuant to Your Honor's Individual Practices, Rule III.B.iii, to set forth the basis for Defendants' proposed motion to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim.

      The Complaint attempts to plead three causes of action: (1) copyright infringement; (2) breach of contract; and (3) "hot news" misappropriation. In accordance with Your Honor's Individual Rule III.B.ii, the parties have previously exchanged letters regarding Defendants' proposed motion to dismiss. In response, Plaintiff agreed to voluntarily dismiss Count III of the Complaint without prejudice. *See* Dkt. No. 28. Defendants now seek leave to move against the remaining counts.

     **I.**    **Lack of Personal Jurisdiction (Both Remaining Counts)**

      The Complaint acknowledges that all defendants are California residents and offers no allegations sufficient to establish personal jurisdiction over Defendants in New York. Critically, it is a well-established principle that a passive website—like the one at issue here—cannot suffice as a basis for personal jurisdiction. *See Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Yian Chen,* 2013 U.S. Dist. LEXIS 59538, *26-*28 (S.D.N.Y. Apr. 25, 2013) (collecting cases).

150 East 42nd Street • New York, NY 10017 • p 212.490.3000 • f 212.490.3038

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • FrankFurt • Munich • Paris

wilsonelser.com

11279053v.1



In response to Defendants' meet-and-confer letter, Plaintiff indicated that jurisdiction is premised entirely on a forum selection clause buried within Plaintiff's website's Terms of Use, and Defendants' alleged consent to those terms. Plaintiff's position is wrong for three reasons.

First, the Complaint does not allege that Defendants consented to the forum selection clause. In a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Kernan v. Kurz- Hastings, Inc.*, 175 F.3d 236, 240 2d. Cir. 1999) (internal citations omitted). Here, without any express jurisdictional allegations, Plaintiff fails to clear the bar. In particular, it is entirely ambiguous which Defendants are alleged to have accessed Plaintiff's website in order to have consented to the terms, e.g. there is no allegation that the individually named defendant ever personally viewed the website.

Second, Defendants did not access the website and therefore could not have consented to its Terms of Use. At most, the Complaint alleges that the authors of Defendants' news articles accessed Plaintiff's website in order to plagiarize it. *See e.g.* Cmpl. ¶ 31. But Defendants' articles are authored by independent contractors.[1] "The New York Court of Appeals has indicated that the acts of an independent contractor in New York cannot be attributed to his non-domiciliary principal under § 302(a)(1) [of the New York Long Arm Statute]*.*" *Loria & Weinhaus, Inc. v. H. R. Kaminsky & Sons, Inc.*, 80 F.R.D. 494, 498 (S.D.N.Y. 1978) (citing *Glassman v. Hyder*, 23 N.Y.2d 354, 362, 244 N.E.2d 259, 263, 296 N.Y.S.2d 783, 789 (1968)). Likewise, unlike an agent, an independent contractor cannot bind a principal to a contract. *G.D. Searle & Co. v. Medicore Commc'ns*, 843 F. Supp. 895, 904-05 (S.D.N.Y. 1994). Accordingly, even if Defendants' independent contractors viewed Plaintiff's website as alleged, this is insufficient to hale Defendants into a New York court based on a forum selection clause found in that website's Terms of Use.

Third, Plaintiff's Terms of Use are not a binding contract. The Terms of Use do not require an accessing party to manifest assent to its provisions. Instead, it is a "browsewrap agreement" in which the user purportedly assents to the provisions merely by visiting the website. Browsewrap provisions are generally enforced only if "the website user . . . had actual or constructive knowledge of the site's terms and conditions, and . . . manifested assent to them." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 129 n.18 (2d Cir. 2012). As already discussed, Defendants did not access or assent.

Moreover, in *Specht v. Netscape Communs. Corp.*, 306 F.3d 17 (2d Cir. 2002), a decision authored by Supreme Court Justice Sonia Sotomayor when she sat on the Second Circuit Court of Appeals, the Court concluded that a provision that a user would not encounter until he or she had scrolled down multiple screens was not enforceable because "a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms." 306 F.3d at 32.

Here, while Plaintiff alleges that each article on its website contains a link to its Terms of Use, the links are disguised from visitors. The referenced links purport to direct users to a "legal

---

[1] When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), a court may consider documents beyond the pleadings. *DiStefano v. Carozzi North Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).


disclaimer" rather than a contractually binding Terms of Use. Meanwhile, the only link that accurately identifies itself as "Terms of Use" is buried at the bottom of the page in extremely small print. In addition, the Terms of Use are nine pages in length, deal mostly with disclaimers regarding attorney advertising, and bury the relevant forum selection provisions in the eighteenth paragraph of the purported contract. *See* Cmpl., Ex. A. On these facts, as a matter of law, Plaintiff's purported browsewrap agreement is not enforceable as a contract.

## II. No Substantial Similarity (Count I – Copyright Infringement)

The Second Circuit has "repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve [substantial similarity] as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)). "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works." *Id*. at 64 (internal quotation marks omitted). Where, as here, the works in question are attached to the Complaint, "it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Id*. at 64.

There are two different types of copyright infringement claims described in the Complaint. First, there are allegedly copied news articles. Second, there are allegedly copied "seed stories," which are fictional. The Complaint fails to state a claim as to the former.

"[C]opyright does not protect facts or ideas set forth in a work;" rather, the law only protects the "author's manner of expressing those facts and ideas." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015). In particular, "'news events' may not be copyrighted." *Wainwright Sec. v. Wall St. Transcript Corp.*, 558 F.2d 91, 95 (2d Cir. 1977). Instead, in the context of news reporting, "[w]hat is protected is the manner of expression, the author's analysis or interpretation of events, the way he structures his material and marshals facts, his choice of words, and the emphasis he gives to particular developments." *Id*. at 95-96.

Undertaking a comparison of the news reporting at issue, there is little similarity between the parties' respective works. The relevant facts are rearranged, the word choice varies, and Plaintiff's legal analysis is not copied in any way. In fact, Defendants' articles contain details not found in Plaintiff's publications. For example, in the Davinder Dogra article (Cmpl., Ex. F), Defendants state "the impact knocked the male victim to the ground"—a detail not noted in Plaintiff's article. Likewise, in the Gregory Murray article (Cmpl., Ex. G), Defendants note that "when first responders got to the scene, they found the deceased lying on the roadway," and further state that "there is also no information on the vehicle the driver was driving"—both items omitted from Plaintiff's version of the report. Finally, with respect to Shirley Lewis article (Cmpl., Ex. H), Defendants' article notes that "aside from the deceased, the police found a victim whom they identified only as a 91-year-old male." While Plaintiff's reporting makes a fleeting and unexplained reference to a second 91-year-old victim, Plaintiff's article does not note this



- 4 -

second victim's gender. Accordingly, there is a strong indication that Defendants' stories were independently sourced from the public police reporting credited in both parties' accounts.

Notably both Plaintiff's and Defendants' articles are routinely published days after the news events occur, and both parties' reports attribute the substantive content of the articles to information provided publicly by law enforcement. For example:

| **Article** | **Plaintiff's quotes (emphasis added)** | **Defendants' quotes (emphasis added)** |
|---|---|---|
| Davinder Dogra (Cmpl., Ex. F) | "It's still unclear whether or not the driver involved remained at the scene or fled as those details were not disclosed *in the report*." | "…*the Los Angeles Police Department released additional details* about the incident on Friday, March 13, confirming the victim did not survive the crash." |
| Gregory Murray (Cmpl., Ex. G) | "Medics arrived at the crash scene and took the victim to an area hospital where he, sadly, died of injuries, *authorities reported*." | "*The Culver City Police Department on Friday, March 13th, released the details* of the events that sent the man to the afterlife. *The CCPD stated in its report* that Murray passed …*the report* did not state whether or not the man stayed behind at the scene." |
| Shirley Lewis (Cmpl., Ex. H) | "*Police said* that for the reasons unknown, two vehicles collided around 7:10 a.m. near South La Brea Avenue and Ferndale Street." | "*The police report* showed that the deceased was riding one of the crashed vehicles…" |

Once any non-copyrightable facts are separated from the analysis, there is no substantial similarity between the parties' works—warranting dismissal on the pleadings.

### III. No Assent (Count II – Breach of Contract)

As detailed *supra* Point I, Plaintiff's website's Terms of Use are not enforceable as a contract. Therefore, Plaintiff's breach of contract claim fails as a matter of law.

\* \* \*

Based on the foregoing, Defendants request a pre-motion conference to address their proposed motion to dismiss so that they may seek leave to file and, if leave is granted, so that a briefing schedule may be set.

11279053v.1



- 5 -

Respectfully submitted,

Wilson Elser Moskowitz Edelman & Dicker LLP

/s/ Jura Zibas

Jura C. Zibas
Stephen J. Barrett

cc: All parties (VIA ECF)

11279053v.1