Scott D. Bergin
Richard R. DuVall
Lance N. Portman
Richard J. Olson
Matthew V. Mirabile
Kimberly Hunt Lee
Rebecca M. Blahut
Daniel C. Stafford
Tristan Smith
Catherine Stefanik
Joanna M. Longcore
Trevor J. Halsey



McCABE & MACK LLP
ATTORNEYS AT LAW

mccm.com

*Of Counsel*
J. Joseph McGowan
David L. Posner
Ellen L. Baker
Hon. Albert M. Rosenblatt
Hon. George D. Marlow
Hon. Ralph A. Beisner
Cory A. Poolman
_____

John E. Mack *1874-1958*
Joseph A. McCabe *1890-1973*
Edward J. Mack *1910-1998*
Joseph C. McCabe *1925-1981*

Direct Dial: (845) 486-6892
E-mail: jlongcore@mccm.com

November 16, 2020

**Via ECF and E-Mail**
Hon. Analisa Torres
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Courtroom: 15D
New York, NY 10007-1312

Re:   Belsito Communications, Inc. d/b/a The Legal Advocate v.
      Torklaw d/b/a Accidentnews, Co., et al.
      Civil Action No: 1:20-cv-05094
      Our File No: 16954-1

Dear Judge Torres:

  Our office represents the plaintiff Belsito Communications Inc. d/b/a The Legal Advocate, in the above referenced matter.  This letter is being submitted  in opposition to defendants' pre-motion to dismiss letter, in accordance with Your Honor's Individual Practices Rule III.B.iii.  Defendant's letter was submitted on Friday, November 6, 2020 and Wednesday, November 11, 2020 was a federal holiday.  Accordingly, this letter is being timely submitted within five (5) business of the filing of defendants' letter and within one (1) business day of defendants' e-mailing of said letter in accordance with Rule III.B.iii.

  While Your Honor's Individual Practices also provide, pursuant to Rule III.B.ii, that leave to amend a complaint should be sought before the second exchange of letters under Rule III.B.iii it should be noted that many deficiencies alleged in defendants' Rule III.B.iii letter were not raised in defendants' Rule III.B.ii letter.  While plaintiff continues to believe that defendants' motion to dismiss lacks merit, upon review of these new allegations, and without admitting to the validity of any argument contained within defendants' Rule III.B.iii letter, plaintiff respectfully requests leave to amend the complaint, either prior to or within 21 days after defendants' submission of a motion to dismiss in accordance with Rule III.B.iv.

  **I.**  **Personal Jurisdiction**

  As plaintiff noted in its Rule III.B.ii letter, it is well settled that parties can consent to personal

jurisdiction through forum selection clauses.  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006).  Here, defendants do not dispute that The Legal Advocate's "Website Terms of Use," contains a valid forum selection clause which provides that users of The Legal Advocate website expressly agree to "submit to the personal jurisdiction of and venue in the state and federal courts located in the State of New York, in the judicial district that includes New Windsor, New York."  See Plaintiff's Complaint, Exhibit "A", ¶ 18.

The cases cited by defendants in an attempt to avoid the consequences of their actions simply do not apply to the facts at issue in this case.  Critically, those cases concern unsophisticated users who may be unlikely to read a website's terms of use unless expressly prompted to do so.  In contrast, the defendants in this action are sophisticated parties with legal expertise and experience in website management.  Under these circumstances, the subject forum selection clause was reasonably communicated to the defendants, and the defendants have consented to personal jurisdiction in the Southern District of New York.  See Int'l Council of Shopping Ctrs., Inc. v. Info Quarter, LLC, 17-cv-5526 (AJN), 2018 U.S. Dist. LEXIS 152974, at *9-10 (S.D.N.Y. Sept. 7, 2018).

This is particularly true given the prominent display of hyperlinks to the Website Terms of Use contained at the top of every article accessed by the defendants, as well as displayed in a commonly used location on the website.  In fact, while defendants claim that the Terms of Use is "buried at the bottom of [The Legal Advocate's homepage] in extremely small print," it is worth noting that the defendants' themselves place their own website terms, privacy polices and/or disclaimers in the same location using the same size print.

Moreover, contrary to defendants' insinuation to the contrary, plaintiff's use of the phrase "legal disclaimer" at the top of every article to provide a hyperlink to the Website Terms of Use is intended to make it *more* likely that a given user will click the link and review the terms of service.  While it may be unlikely that a user would clink on a link to generic terms of use that may or may not have any legal implication, users, and particularly licensed and experienced attorneys such as defendants, are far more likely to click on a link that plainly identifies and highlights the potential legal ramifications.

Further, the conclusory statements of defendants' attorney that defendants cannot be bound by the forum selection clause in the Terms of Use because they did not personally access plaintiff's website and they are not otherwise bound by the actions of the individuals who wrote the subject article is wholly without merit and certainly cannot provide a basis for dismissal.  See, e.g., Insussary v. Adminstaff Cos., 98 Civ. 5404 (AKH), 1999 U.S. Dist. LEXIS 7154, at *9 (S.D.N.Y. May 13, 1999); see also United States v. Carrasquillo, S1 98 CR. 927 (RWS), 2000 U.S. Dist. LEXIS 366, at *5-6 (S.D.N.Y. Jan. 17, 2000).

While defendant notes that courts may consider documents beyond the pleadings on a motion to dismiss, the statement of an attorney made without personal knowledge has no evidentiary value whatsoever.  Further, these allegations are belied by the exhibits annexed to plaintiff's Complaint.  Specifically, while defendants claim that plaintiff's website was only accessed by the "freelancers" who wrote the infringing articles, the articles themselves state that they were written by "staff writer[s]," which plainly implies the existence of an employment relationship.  See Plaintiff's Complaint, Exhibit "E", "F", "G", "H".  In addition, when defendant Reza Torkzadeh was first notified that one of the infringing articles was in violation of The Legal Advocate's Terms of Use, he responded that he personally directed the infringing article be taken down and that the Legal Advocate no longer be used as a source.  That type of direction and control demonstrates the existence of an agency relationship

between the subject staff writers and the named defendants, and the named defendants are, therefore, bound by their actions.

## II.     Substantial Similarity (Copyright Infringement)

Defendants claim that plaintiff has failed to state a claim for copyright infringement with respect to only three (3) of the five (5) articles alleged to have been infringed.  Specifically defendants claim that the articles first published by plaintiff concerning real world news events were not infringed upon by the articles published by defendants concerning those same events a short while thereafter.

Typically, an allegedly infringing work is considered substantially similar to a copyrighted work if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001) (*quoting* Folio Impressions, Inc. v. Byer California, 937 F.3d 759, 765 (2d Cir. 1991). Here, the subject articles very clearly have the same aesthetic appeal and the minor discrepancies identified by defendants would almost certainly be overlooked by a casual observer who did not set out to detect them.

Nevertheless, a more refined analysis is required where a plaintiff's work incorporates elements from the public domain.  Boisson, *supra*, at 272.  Under this more discerning test, what must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation.  Id.  Yet, even this analysis must still be guided by the total concept and feel of the contested works. Id.

In this case, there remains an "enormous amount of sameness" in the protected elements of the subject articles alone such that a finding of infringement would be warranted.  See id. at 274.  Specifically, a comparison between the subject articles reveals that the organization and structure in which the information is presented is nearly identical.  Similarly, the defendants' articles consistently mimic the unique word choices and phrasing used by plaintiff in ways that seem unlikely to be a mere coincidence—copying plaintiff's use of "area hospital" instead of using "nearby hospital" or "local hospital," for example.

In addition, with respect to both the Gregory Murray and Shirley Lewis articles, defendants have expressly copied plaintiff's creative choice to expand the article beyond mere incident specific reporting and to include more general information.  Notably, with respect to the Gregory Murray article in particular, defendants have copied plaintiff's precise choice of what general and other was unrelated information to highlight and emphasize.

While defendants identify certain factual details in their infringing articles that were not included in the plaintiff's original works, these non-protected elements are simply not relevant to the substantial similarity analysis.  It is the protected elements of structure, organization, emphasis, and word-choice in plaintiff's works that were infringed upon by defendants.

Finally, defendants' infringement of plaintiff's purely fictional articles creates a presumption that defendants improperly relied upon plaintiff's website as the source for their "real news" articles as well.

## III.     Breach of Contract

   For the same reasons that the defendants are bound by the forum selection clause of the Website Terms of Use, they are equally bound by those provisions of the Website Terms of Use that form the basis of plaintiff's breach of contract claims.  Ultimately, what distinguishes this case from those cases in which Courts have declined to enforce provisions in a browsewrap agreement is defendants' status a uniquely sophisticated party.  See Int'l Council, *supra*, at *9-10.

   Indeed, as defendants admit, the provisions of a website's terms of use will be enforced where the website user had actual or constructive knowledge of the site's terms and conditions and manifested assent to them.  See Schnabel v. Trilegiant Corp., 697 F.3d 110, 129 n. 18 (2d Cir. 2012). Here, given defendants' status as a trained and experienced attorney, it is highly likely that defendants did have actual knowledge of the Website Terms of Use.  At the very least, in light defendants' experience in website management and knowledge browsewrap agreements, and the ample opportunities provided for users of The Legal Advocate to review the Website Terms of Use, defendants certainly had constructive knowledge thereof, and manifested assent to those terms by continuing to access the website after obtaining such actual and/or constructive knowledge.

   In light of the foregoing, defendants should be denied leave to file a motion to dismiss as any such motion is patently lacking in merit.  In addition, plaintiff should be afforded an opportunity to amend the complaint to include further factual allegations, based on the documented evidence annexed to the initial complaint, that would fully satisfy the necessary pleading requirements and render defendants' proposed motion to dismiss moot.

   Thank you for your attention to this matter.


Respectfully submitted,


McCABE & MACK LLP

*[signature]*

JOANNA M. LONGCORE
Attorneys for Plaintiff
63 Washington Street
P.O. Box 509
 Poughkeepsie, NY 12602-0509
Tel: (845) 486-6800

cc: Stephen J. Barrett, Counsel for Defendants, via ECF and E-mail